FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAN 3 1 2020

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ANGELICA E.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:19-CV-03056-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 12) and the Defendant's Motion For Summary Judgment (ECF No. 13).

## JURISDICTION

Angelica E., Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on June 16, 2015. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on December 20, 2017, before Administrative Law Judge (ALJ) Kimberly Boyce. Plaintiff testified at the hearing, as did Vocational Expert (VE) Kimberly Mullinax. On April 4, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her application for SSI benefits, Plaintiff was 35 years old, and at the time of the administrative hearing, she was 39 years old. She has a high school education and no past relevant work experience.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to find Plaintiff has a "severe" mental health impairment; 2) not providing specific, clear and convincing reasons for discrediting Plaintiff's testimony regarding her symptoms and limitations; 3) failing to provide adequate reasons for rejecting the opinions of treating medical providers; and 4) presenting a hypothetical to the VE regarding Plaintiff's residual functional capacity (RFC) that is not supported by substantial evidence in the record.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 3**

416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

## ALJ'S FINDINGS

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being obesity, carpal tunnel syndrome, and a hernia; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the RFC to perform "light" work, except she can occasionally handle with the dominant right upper extremity and can occasionally feel, and she can perform work in which concentrated exposure to hazards is not present; and 4) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy, including furniture rental consultant, bakery worker (conveyor line), and usher. Accordingly, the ALJ concluded the Plaintiff is not disabled.

## SEVERE IMPAIRMENTS

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908.

Step two is a *de minimis* inquiry designed to weed out non-meritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing,

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 5**

hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*.

The ALJ found Plaintiff did not have a "severe" mental impairment because the evidence showed that her depression and anxiety symptoms were sufficiently managed. The ALJ cited "substantial evidence" in support of this finding. The medical evidence, as discussed below, "clearly established' that Plaintiff does not have a "severe" mental health impairment.

Plaintiff was seen at Central Washington Comprehensive Mental Health (CWCMH) in 2010-11. An issue developed with the Plaintiff keeping her appointments. (AR at pp. 429-30). In February 2011, Plaintiff indicated she was not interested in therapy, but wanted to continue medication management. (AR at p. 433). Plaintiff asserted she did not have coverage for therapy and could not afford it. (AR at p. 434). In December 2010, Plaintiff agreed with her therapist that she was capable of working 21-30 hours per week. (AR at p. 438). She noted she had never had a full-time job, only part-time jobs, and her dream had always been to be a stay-at-home mom. (AR at p. 440).

In February 2015, Plaintiff underwent a consultative psychological examination by Roland Dougherty, Ph.D., at the behest of the Commissioner. She

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

informed Dr. Dougherty that she had four children, ranging in ages from 5 to 12. (AR at pp. 276-77). She described how she takes care of her children and her household. (AR at p. 277). Dr. Dougherty diagnosed Plaintiff with dysthymia and anxiety disorder, not otherwise specified. (AR at p. 277). He assigned her a current (Global Assessment of Functioning (GAF) score of 60, at the top end of the range (51-60) indicating moderate symptoms and moderate difficulty in social, occupational, or school functioning.[1] Dr. Dougherty described Plaintiff's depression as "mild to moderate on her present medication and it fluctuates in severity." (AR at p. 278). He indicated Plaintiff "experiences anxiety about once or twice a week, for up to an hour." (*Id.*). Dr. Dougherty found Plaintiff to be "pleasant and cooperative;" "had no difficulty in answering my questions;" her social skills appeared to be good; her thinking was logical and goal directed; and she had the ability to do multiple household tasks, could use a recipe when cooking, had basic computer skill, drove a car, and cared for her children. (*Id.*). As such, Dr. Dougherty opined as follows:

> I believe [she] has the ability to do detailed and complex tasks. She was responsive to me and completed the tasks she was asked to. I believe that she has the ability to accept instructions from supervisors and to interact with coworkers and the public.
>
> . . . I do not believe that her psychological difficulties are likely to make it very difficult for her to maintain regular attendance in the workplace. She **may** have some difficulty in completing a normal workday/workweek without interruptions from her depression and anxiety. The same conditions **may** make it at least mildly difficult for her to deal with the stress encountered in the workplace.

(AR at p. 278)(emphasis added). As is apparent, Dr. Dougherty was equivocal as to whether Plaintiff's mental health issues would have any impact on her ability to

---

[1] *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

perform basic work-related activities.

In April 2015, Plaintiff resumed treatment at CWCMH. She claimed she stopped treatment because she no longer had medical coverage. (AR at p. 293). At that time, she was assigned a GAF score of 37 by therapist William Short, M.S., indicating major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. (AR. at p. 297). By November 2015, however, Mr. Short, in a Washington State Department of Social and Health Services (DSHS) "WorkFirst Documentation Request Form for Medical or Disability Condition," opined that Plaintiff's depression did not limit her ability to work, look for work, or prepare for work. (AR at p. 609). Short described Plaintiff's treatment plan as attending weekly individual therapy sessions and working on coping skills at home. (AR at p. 610).

In August 2016, Plaintiff stated her depression was improving and was no longer "debilitating" (AR at p. 547), and in October 2016, psychiatrist Rafat R. Zakhary, M.D., reported that he could not find symptoms to support her "major depression." (AR at p. 572).

In April 2017, Plaintiff was discharged "due to non-adherence to treatment." (AR at p. 625). She was discharged "due to her not fulfilling her treatment recommendations and not coming into her scheduled appointments on a regular basis." (AR at p. 665).

Plaintiff was again seen at CWCMH in June 2017. She stated she "will do child care and has done this pretty much all her life" and "is not able to keep a job because her first priority is her children." (AR at p. 677). She indicated she was applying for SSI and could not work because if she did, she would have to "start all over." (*Id.*). Plaintiff completed a PHQ-9 Questionnaire and her score was 9 (*Id.*),

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**

indicating "mild" depression.[2] She also completed a GAD-7 Questionnaire and her score was 7 (*Id.*), indicating "mild" anxiety.[3] As such, Plaintiff did "not meet medical necessity as she [was] not reporting significant distress nor [was] she reporting functional impairment." (AR at p. 679). Plaintiff agreed she was doing better than she ever remembered. (*Id.*).

The ALJ did not err in concluding that Plaintiff's mental impairments cause no more than "mild" limitations and therefore, are not "severe." (AR at p. 19). "Substantial evidence" in the record supports this conclusion. This is so notwithstanding the January/February 2016 opinions of state agency psychologists, Bruce Eather, Ph.D., and Michael L. Brown, Ph.D., that, based on their review of the record, Plaintiff was "moderately" limited in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. (AR at pp. 66-67; 82-83). Even then, Drs. Eather and Brown indicated Plaintiff retained "the ability to maintain attention/concentration sufficient to complete routine tasks over a normal 8-hour workday with customary breaks." (*Id.*).

//
//

---

[2] The Patient Health Questionnaire (PHQ-9) assesses and monitors depression severity.

[3] The Generalized Anxiety Disorder Questionnaire (GAD-7) assesses and monitors anxiety severity.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin,* 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id.*

The ALJ offered clear and convincing reasons for discounting Plaintiff's testimony. (AR at pp. 21-22). In June 2017, when seen at CWCMH, Plaintiff denied physical health concerns and although she indicated she experienced some pain, she stated she was taking ibuprofen for it and had not been seen by a physician for pain. (AR at p. 675). In October 2017, she acknowledged to Nurse Practitioner (ARNP) Irma Mejia at Mid-Valley Community Clinic (MVCC) that she had not followed up with a carpal tunnel specialist in "some time." (AR at p. 704).

Notwithstanding Plaintiff's hearing testimony suggesting she could not adequately care for her children and take care of household chores, the record, as noted by the ALJ in her decision, is replete with references to Plaintiff taking care of

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 10**

her children and managing her household by herself since 2011. (AR at p. 21).[4]
In June 2017, Plaintiff stated "she will do child care and has done this pretty much all her life" and indicated she was unable to keep a job because her first priority was her children as they often get sick. (AR at p. 677).

Plaintiff underwent hernia repair in August 2016. In September 2016, she reported her pain had improved to the point that she just had some flairs of pain. She indicated her primary care physician assistant informed her she should be able to start looking for work after September 29, 2016, and she was excited about the possibility of returning to work. (AR at p. 557). In November 2016, Plaintiff informed ARNP Mejia that residual pain from her hernia pain was tolerable and she denied any abdominal pain. (AR at p. 715).

Plaintiff's statement that she could not work because if she did so, she would have to "start all over" for SSI purposes reasonably suggests, as found by the ALJ, that she was not working for reasons unrelated to a mental or physical impairment.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by

---

[4] See discussion *infra* as to what Plaintiff told Dr. Opara about her daily living activities.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 11**

substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). . The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).[5]

In October 2014, Mary Pine, a certified physician's assistant (PA-C) with MVCC, completed a DSHS form in which she indicated Plaintiff could not lift over 10 pounds because she was right-handed and had undergone carpal tunnel surgery on her that hand which left her with scar tissue and resulting numbness and pain, rendering her unable to write and fill out job applications. (AR at p. 252). Pine checked a box indicating Plaintiff was "severely" limited, that being "[u]nable to lift at least 2 pounds or unable to stand or walk." (AR at p. 253).

The Commissioner sent Plaintiff to James Opara, M.D., for a consultative physical evaluation in February 2015. In his report, Dr. Opara offered a description

---

[5] For claims filed on or after March 27, 2017, physician assistants are now considered "acceptable medical sources." 82 Fed. Reg. 5844 (Jan. 18, 2017).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

of Plaintiff's daily living activities:

> When she wakes up in the morning[,] she take care of her children and takes them to school. She comes back and takes her breakfast. She washes dishes and does other house chores, like cleaning, sweeping, and mopping. She gets her children back from school in the early afternoon and then does cleaning of the house and goes . . . grocery shopping when needed. She takes care of her children, especially their personal needs and makes dinner for them and after that she goes to bed. She takes care of her personal needs.

(AR at p. 281).

Based on his examination, he diagnosed Plaintiff with obesity, but "with no associated diminished range of motion of the joints;" bilateral carpal tunnel syndrome "with no weakness of grip and no wasting of the muscle of the hand;" and a large incisional hernia in the suprapubic area, "tender to touch but reducible." (AR at p. 283). He opined that Plaintiff had no limitation with regard to her capacity to stand, walk or sit, and that she was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently due to her hernia. (*Id.*). He opined that there was no limitation on Plaintiff's postural and manipulative activities. (*Id.*).

In November 2016, ARNP Mejia completed a DSHS form in which she, like PA-C Pine in October 2014, checked a box indicating Plaintiff was "severely limited" in that she was "[u]nable to lift at least 2 pounds or unable to stand or walk." (AR at p. 718). In October 2017, however, ARNP Mejia checked the box for "sedentary" work indicating ability to lift 10 pounds maximum and frequently lift or carry articles such as files and small tools. (AR at p. 708).

The ALJ provided "germane" reasons for discounting the opinions of PA-C Pine and ARNP Mejia, and giving greater weight to the opinion of Dr. Opara. There is "substantial evidence" in the record, as discussed above, which supports the ALJ's conclusion that the opinions of PA-C Pine and ARNP Mejia are not consistent with the record evidence. The ALJ accurately noted as follows:

> While the [Plaintiff] has moderate carpal tunnel syndrome

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

in the right hand and some reduced strength in the hand, she otherwise has full strength throughout the extremities. In addition, the claimant has had limited follow-up treatment for her carpal tunnel syndrome and pain, which suggests that her symptoms are not as severe as she claims. The [Plaintiff] also has not exhibited gait abnormalities that would prevent her from standing or walking for six hours during the workday. The claimant also remains quite active caring for her children, which is inconsistent with sedentary or less than sedentary work. She performs all aspects of care for her children by herself including getting them up in the morning, assisting with personal care, transporting them to school, and cooking them meals.

(AR at p. 22).

## CONCLUSION

"Substantial evidence" in the record supports the ALJ's RFC determination that Plaintiff can perform "light" work, subject to occasional handling using her dominant right upper extremity.[6] This determination is consistent in all relevant aspects with the January/February 2016 opinions of state agency physicians, Howard Platter, M.D., and Greg Saue, M.D., who reviewed the medical record. (AR at pp. 64-66;80-82). Based on the RFC as determined by the ALJ, the VE identified jobs existing in significant numbers in the national economy which the Plaintiff would be capable of performing.

The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not

---

[6] 20 C.F.R. §416.967(b) defines "light" work as involving lifting no more than 20 pounds, with frequent lifting and carrying of objects weighing up to 10 pounds. It may require a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm or leg controls.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**

disabled.

Defendant's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this 31st day of January, 2020.

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 15**